IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SOMPO JAPAN NIPPONKOA )
INSURANCE INC.,
) **Case No:**
          *Plaintiff,*
)
  - against -
)
THE BELT RAILWAY COMPANY OF
CHICAGO, )

          *Defendant.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COMPLAINT**

Plaintiff Sompo Japan Nipponkoa Insurance Inc. (hereinafter "Sompo" or "Plaintiff"), for its Complaint, alleges on information and belief as follows:

1. All and singular the following premises are true and constitute claims arising under the laws of the United States within the meaning of 28 U.S.C. § 1331 as a claim arising out of an Act of Congress regulating commerce within the meaning of 28 U.S.C. § 1337(a) and/or pursuant to the Carmack Amendment codified at 49 U.S.C. § 11706 et seq., and/or supplemental claims to certain of the foregoing claims within the meaning of 28 U.S.C. § 1367.

2. This Honorable Court also has jurisdiction over this claim due to the diversity citizenship of the parties, 28 U.S.C. § 1332(1) and the amount in controversy exceeds the sum or value of $75,000.

3. At all times material hereto, Sompo was and is a corporation existing under and by virtue of the laws of Japan with its principal place of business at 11-4, Edobori 1-chome, Nishi-ku, Osaka, 550-8577 Japan.

1

4. At all times material hereto, Defendant The Belt Railway Company of Chicago (hereinafter "Defendant" or "BRC") was and is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Bedford Park, Illinois, and was and is at the relevant times engaged in business as, *inter alia*, a common carrier by rail for hire in interstate commerce, and operates and runs rail lines, locomotives and rail cars in this District, and does business in the State of Illinois.

5. At all times material hereto, nonparty Kawasaki Heavy Industries, Ltd. (hereinafter "KHI") was and is a corporation existing under and by virtue of the laws of Japan with its principal place of business at 1-18, 2-chome, Wadayama-don, Hyogo-ku, Kobe, 652-0884 Japan.

6. At all times material hereto, nonparty Kawasaki Rail Car, Inc. (hereinafter "KRC") (KRC and KHI being collectively referred to herein as "Kawasaki") was and is a corporation existing under and by virtue of the laws of New York with its principal place of business at 29 Wells Avenue, Building 4, Yonkers, New York 10701.

7. Venue is proper here within the meaning of 28 U.S.C. § 1391(b)(1) because BRC has its offices here and does business and otherwise resides in this District in Illinois, the derailment in question occurred in this District, and the witnesses thereto are located in this District.

## **THE FACTS**

8. Kawasaki was and is the owner of eight brand new M9 passenger railcars (hereinafter "the Equipment") which it was at the relevant times in the process of having shipped from Pueblo, Colorado to its customer at Fresh Pond, New York for delivery.

9. On or about May 15, 2018, at Bedford Park, Illinois, there was delivered to Chicago Belt, as a rail common carrier for hire, the Equipment, in good order and condition, which was accepted by Chicago Belt, who undertook to transport the Equipment from where it was received at Chicago Belt's rail connection, across its tracks to Chicago Belt's rail connection to nonparty CSX.

10. On or about May 15, 2018, while BRC was transporting the Equipment on its tracks and/or within its railyard, the Equipment was damaged by derailment (hereinafter "derailment").

11. The derailment occurred while BRC was inappropriately, and counter to the safe practices and standards of the railroad industry, shoving against the Equipment and using the Equipment to shove approximately 114 additional cargo railcars through its hump yard, in the process of humping them.

12. It is well known in the railroad industry that passenger railcars, such as the Equipment at issue, should never be humped, and should never be located at the rear of a train and utilized to push or shove heavy freight cars in that train.

13. BRC's own operating rules designate passenger equipment, such as the Equipment in this case, as "Do Not Hump" cars, and forbid using passenger railcars to push or shove other heavy freight cars.

14. It is well known in the railroad industry that to push or shove passenger railcars against other freight cars will cause the passenger cars to derail and suffer significant damage.

15. The Equipment was prominently marked with the industry standard warning "DO NOT HUMP" which gave further notice, immediately recognizable and understood

3

within the railroad industry, as a warning to not run such railcars through a hump yard and to not use such railcars to shove against other railcars.

16. As passenger railcars, and as railcars marked "DO NOT HUMP," the Equipment should not have been shoved, should not have been used to shove other freight cars, should have been removed from the train before shoving the train to the hump yard, should have bypassed the hump yard and should have been added to the train manually.

17. BRC issued tariffs which were in effect on the date of the derailment which, to the extent they applied to this loss, contained no limitation of liability and precluded the application of rules, terms or contractual documents of any other railroads while the Equipment was in BRC's possession.

18. Specifically, the BRC tariff in effect on the date of the derailment stated in part:

> Item 1: General Rules and Regulations
>
> Freight transported under this tariff, in addition to the rates named herein, will be subject to current rules and regulations of The Belt Railway Company of Chicago while in its possession, and of connecting carriers while in their possession, which rules and regulations are published and lawfully on file with the Interstate Commerce Commission, relating to car service, demurrage, diversion, reconsignment, storage, transit privileges, or any other privileges, charges or rules which in any way increase or decrease the value of the service to the shipper.

19. BRC violated its own tariffs in respect to the Equipment.

20. Sompo insured the Equipment against loss and damage. By reason of the loss described above, Sompo was obliged to pay and actually paid losses arising out of the derailment to Kawasaki, and to that extent is subrogated to their rights, and they and Kawasaki incurred substantial additional other expenses, for which Defendant BRC is legally liable. Plaintiff

brings this action on their own behalf and as agent or trustee on behalf of all parties who may be or become interested in the subject Equipment as their respective interests may ultimately appear, and Plaintiff is duly entitled to maintain this action.

21. Plaintiff has performed all conditions on its part to be performed

22. By reason of the foregoing, Defendant BRC has caused damage to Plaintiff in an amount, as nearly as can now be estimated, up to or exceeding US $8,000,000.00.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT AND/OR DUTIES UNDER THE CARMACK AMENDMENT

23. Plaintiff incorporates herein by reference all of the preceding allegations and all of the allegations below.

24. By reason of the forgoing, Defendant BRC was a carrier within the meaning of the Carmack Amendment, 49 U.S.C. Section 11706 et seq., and/or other applicable laws and/or under any applicable tariffs or transportation contracts, and breached their duty of a rail carrier under said laws and/or under any applicable tariffs or contracts of carriage.

25. By reason of the foregoing, Defendant BRC has caused damage to Plaintiff in an amount, as nearly as can now be estimated, up to or exceeding US $8,000,000.00.

## SECOND CAUSE OF ACTION

### NEGLIGENCE and/or GROSS NEGLIGENCE and/or WILLFUL MISCONDUCT

26. Plaintiff incorporates herein by reference all of the preceding allegations and all of the allegations below.

27. Defendant BRC, by its negligence and/or gross negligence and/or willful misconduct, caused the loss to the Equipment. BRC therefore improperly failed to deliver the Equipment in as good condition as when entrusted to it and/or caused the Equipment to be damaged by negligent act and/or omission.

28. By reason of the foregoing, Defendant BRC has caused damage to Plaintiff in an amount, as nearly as can now be estimated, up to or exceeding US $8,000,000.00.

### THIRD CAUSE OF ACTION

### BREACH OF BAILMENT OBLIGATIONS

29. Plaintiff incorporates herein by reference all of the preceding allegations and all of the allegations below.

30. Defendant BRC was acting as bailee of the Equipment at the time of the loss. The Defendant BRC was thereby, or through its contractors, agents, servants or sub-bailees, a bailee who warranted and had a legal duty to safely keep, transport, care for and deliver the Equipment in the same condition as when entrusted to it and to perform its services as a bailee or to ensure that those services were performed with reasonable care and in a non-negligent and workmanlike manner. The Defendant BRC breached those bailment obligations and negligently failed to deliver the Equipment in as good condition as when entrusted to it.

31. By reason of the foregoing, Defendant BRC has caused damage to Plaintiff in an amount, as nearly as can now be estimated, up to or exceeding US $8,000,000.00.

WHEREOF, Plaintiff prays:

1. That process in due form of law may issue against the Defendant, citing it to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiff against Defendant on each of the Causes of Action for the amount of Plaintiff's damages, together with interest and costs and the disbursement of this action.

3. That this Court will grant to Plaintiff such other and further relief as may be just and proper.

Dated: February 20, 2020
SOMPO JAPAN NIPPONKOA INSURANCE, INC.

By: /s/ James J. Sipchen
James J. Sipchen, Esq.
Quinn P. Donnelly, Esq.
One South Wacker Drive
Suite 2500
Chicago, IL 60606
Tel: (312) 578-7422
Fax: (312) 346-8242
Email: jsipchen@pretzel-stouffer.com
qdonnelly@pretzel-stouffer.com
*Attorneys for Plaintiff*

-and-

MALOOF & BROWNE LLC
David T. Maloof, Esq.
(*pro hac vice* application pending)
Kipp C. Leland, Esq.
(*pro hac vice* application pending)
411 Theodore Fremd Ave. Suite 190
Rye, New York, 10580
Tel: (914)-921-1200
Fax: (914)-921-1023
Email: dmaloof@maloofandbrowne.com
kleland@maloofandbrowne.com
*Attorneys for Plaintiff*